UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHESTNUT ASSOCIATES, INC.,

Plaintiff,

v. CASE NO. 8:13-CV-1755-T-17TBM

ASSURANCE COMPANY OF AMERICA, ZURICH d/b/a ZURICH SMALL BUSINESS and MARYLAND CASUALTY COMPANY,

Defendants.

_________________________/

ORDER

This cause is before the Court on:

Dkt. 21 Motion for Summary Judgment
Dkt. 28 Response

This case is an action for declaratory relief. Plaintiff Chestnut Associates, Inc. seeks a declaration of Plaintiff's rights and duties under the insurance policy issued to Plaintiff, the costs of suit, and other appropriate relief. Plaintiffs allege that Defendants refused to defend Plaintiff in a lawsuit filed against Plaintiff in Pasco County Circuit Court, Brian Jansen and Cheryl Jansen v. Chestnut Associates, Inc. d/b/a PINCH-A-PENNY, a Florida corporation, Case No. 51-2011-CA-1952-WS. The Complaint in that case includes two counts of intentional infliction of emotional distress, for which Brian Jansen and Cheryl Jansen seek a judgment for damages. Plaintiff has attached Defendants' response to Plaintiff's claim, in which Defendants deny the duty to defend and the duty to indemnify. (Dkt. 2-1, pp. 55-56).

Case No. 8:13-CV-1755-T-17TBM

Defendants Assurance Company of America and Maryland Casualty Company ("Assurance") move for entry of summary judgment, seeking a declaration that Assurance has no obligation to defend or indemnify Plaintiff for the above lawsuit for intentional infliction of emotional distress.

In the Response to Order to Show Cause (Dkt. 26), Plaintiff states this case is moot, due to non-prosecution of the underlying complaint. The Court has examined the court records of Pasco County Circuit Court, and notes that the underlying case is listed as an open case. The case has not been dismissed. The Court will therefore rule on the pending motions in this case.

I. Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

> "The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable

jury could return a verdict for the non-moving party." See Anderson, 477 U.S. at 248. But, "[i]f the evidence is merely colorable...or is not significantly probative...summary judgment may be granted." Id. at 249-50.

## II. Statement of Facts

Plaintiff does not disagree with any of the facts recited by Defendant.

1. Jansen filed suit against Chestnut in the Sixth Judicial Circuit in and for Pasco County, Florida, Case no. 51-2011-CA-1952-WS.

2. In the complaint, Jansen alleges that Chestnut's pool service technician came to his house in Holiday, Florida to service the swimming pool.

3. Jansen alleges that "the pool service technician removed all of his clothes and entered the pool naked." The technician then "sexually pleasured himself in the pool" and "brought this sexual behavior to conclusion by casting ejaculate into [Jansen's] pool."

4. Jansen alleges that Chestnut's "pool service technician intended and knew or should have known that emotional distress would likely result of [Jansen] as a result of this subject behavior.

5. Jansen seeks damages for emotional distress, mental anguish, embarrassment, humiliation, loss of dignity and diminution of the value of his house.

Case No. 8:13-CV-1755-T-17TBM

6. The only cause of action alleged in the underlying complaint is for intentional infliction of emotional distress.

7. Assurance Company of America issued a Precision Portfolio Policy to "Chestnut Associates, Inc DBA Pinch A Penny" as the named insured, bearing Policy No. PAS 43556472, and effective from 7/21/2010 through 7/21/2011.

8. The Policy provides:

**SECTION I - Coverages**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.....

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";....

**2. Exclusions**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.....

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants"......

**SECTION V - DEFINITIONS**

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease......

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially all the same general harmful conditions.....

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditions or reclaimed.....

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical Injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

III. Discussion

A. General Principles

Under Florida law, the issue of an insurer's duty to defend a lawsuit against its insured is governed by the terms of the policy and the allegations of the complaint. See Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533, 536 (Fla. 1977) ("The allegations of the complaint govern the duty of the insurer to defend."); McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 758 So.2d 692, 695 (Fla. 4th DCA 2000) ("'[t]he duty of an insurer to defend is determined *solely* by the allegations of the complaint against the insured' and 'an insurer has no duty to defend a suit against an insured if the complaint on its face alleges a state of facts that fails to bring the case within the coverage of the policy.'") (emphasis in original) (quoting Marr Invs., Inc. v. Greco, 621 So.2d 447, 449 (Fla. 4th DCA 1993)); Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810, 813 (Fla. 1st DCA 1985) ("The rule is firmly established in Florida that a liability insurer's obligation to defend a claim made against its insured must be determined from the allegations in the complaint."); C.A. Fielland, Inc. v. Fid. & Cas. Co., 297 So.2d 122, 127 (Fla. 2d DCA 1974) ("The duty to defend, in the first instance, is determined from the allegations of the complaint."). This rule is called the "eight corners rule," a reference to the four corners of the policy and the four corners of the complaint. See Colony Ins. Co. v. Barnes, 410 F.Supp.2d 1137 (N.D. Fla. 2005). If the complaint alleges any claim that, if proven, might come within the insurer's indemnity obligation, the insurer must defend the entire action. Id. at 1139.

The construction of an insurance policy is a question of law for the court. Jones v. Utica Mutual Ins. Co., 463 So.2d 1153, 1157 (Fla. 1985); Roberts v. Florida Lawyer's Mutual Ins. Co., 839 So.2d 843, 845 (Fla. 4th DCA 2003). Insurance contracts are construed according to their plain meaning. Garcia v. Fed. Ins. Co., 969 So.2d 288, 291 (Fla. 2007). If the policy language is not ambiguous, courts apply the plain

language of the policy. HC Waterford Props., Inc. v. Mt. Hawley Ins Co., 2009 WL 2600431, *3 (S.D. Fla. 8/21/2009). A policy is ambiguous when the language is subject to "more than one reasonable interpretation, one providing coverage and the [sic] another limiting coverage...." Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000). Any ambiguities in an insurance policy are to be interpreted liberally and in favor of the insured and strictly against the insurer. See Flores v. Allstate Ins. Co., 819 So.2d 740, 744 (Fla. 2002); Anderson, 756 So.2d at 34; McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 758 So.2d 692, 694-95 (Fla. 4th DCA 1999). [E]xclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured, since it is the insurer who usually drafts the policy. See Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 942 (Fla.1979). However, "[o]nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite. It does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." Id. Simply because a provision is complex and requires analysis for application, it is not automatically rendered ambiguous. See Eagle American Ins. Co. v. Nichols, 814 So.2d 1083, 1085 (Fla. 4th DCA 2002). When construing insurance policies, courts are to read the policy as a whole and attempt to give every provision its full meaning and operative effect. See Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000); see also Sec. 627.419(1), Fla. Stat. (2002).

Under Florida law, an insured bears the burden of proving that a claim against the insured is covered by the insurance policy. LaFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1516 (11th Cir.1997) (internal citations omitted). The burden of proving an exclusion to coverage is, however, on the insurer. Id.

B. Defendant's Motion

Assurance argues that there is no coverage for intentional infliction of emotional distress. The policy at issue covers damage caused by an "occurrence." Defendant agues that, according to the allegations of the underlying complaint, the conduct which caused the Jansens' damages was intentional conduct carried out by a pool service technician employed by Plaintiff. Assurance argues that the intentional conduct is not within the definition of "occurrence" and is excluded from coverage by the pollution exclusion.

Plaintiff disagrees that the allegations of the underlying complaint do not constitute allegations of an occurrence. Plaintiff argues that there was an occurrence within the coverage of the Policy, and, considering the allegations of the underlying complaint, there could not have been an expected or intended injury. Plaintiff argues that there are no allegations that anyone was at home at the time of the alleged incident, that the pool service technician intended to be or that he was being watched while he engaged in the purported conduct, or that he knew security camera were recording his alleged conduct.

Plaintiff further argues that there are sufficient allegations of property damage, including allegations of "[l]oss of or diminution in the value of the subject property." (Pars. 17, 22). Plaintiff argues that the Jansens are seeking damages for, inter alia, loss of use of tangible property. Plaintiff further argues that the exclusion at Sec. I, Par. 2(m) for property damage to "impaired property" or "property that has not been physically injured" which provides that such property is excluded if it arises out of either: 1) a defect, deficiency, inadequacy or dangerous condition in the insured's product or work, or 2) a delay or failure by the insured or anyone acting on its behalf to perform a contract or agreement in accordance with its terms, does not apply to bar coverage. Plaintiff argues that the property damage does not arise out of a defect, deficiency,

inadequacy or dangerous condition in the insured's product or work, nor did it result from the delay or failure by the insured or anyone acting on the insured's behalf to perform a contract or agreement in accordance with its terms.

Plaintiff argues that there was an occurrence and there is coverage for the "property damage" portion of the Claim asserted by the Jansens. Plaintiff further argues that the exclusions relied on by Defendant do not apply to bar or exclude coverage for the subject occurrence and property damage. Plaintiff also argues that if there were any ambiguity in the relevant policy provisions, the ambiguous provisions are to be construed liberally in favor of the insured and against the insurer.

1. Duty to Defend

In the Complaint, Plaintiff alleges that Defendant agreed to insure Plaintiff against loss or liability occurring as a result of Plaintiff's business activities, and also agreed to defend Plaintiff in any action brought against Plaintiff alleging such injury, even if the suit or action was groundless, false or fraudulent.

In determining whether a duty to defend exists, the Court is confined to the allegations of the complaint against the insured, Chestnut Associates, Inc., d/b/a PINCH-A PENNY, without regard to whether those allegations are false, or whether the legal theory asserted is unsound. State Farm Fire and Casualty Co. v. Higgins, 788 So.2d 992, 996 (Fla. 4th DCA 2001); National Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533 (Fla. 1977)(obligation to defend insured measured by allegations of complaint rather than outcome of litigation). The duty to defend is broader than the duty to indemnify; if the allegations of the complaint potentially bring the claim within the coverage afforded by the policy, the insurer is required to defend. However, if the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend.....Wording alone in a pleading does not create a duty to defend, regardless of

its artfulness. See Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc., 771 So.2d 579, 582 (Fla. 4th DCA 2000)(holding that use of "buzz words" in complaint will not trigger coverage when cause of action is for a non-covered act). The allegations within the complaint must state a cause of action that seeks recovery for the type of damages covered by the insurance policy in question. State Farm Fire and Cas. Co. v. Tippett, 864 So.2d 31, 35-36 (Fla. 4th DCA 2003).

Exclusionary clauses in liability insurance policies are always strictly construed. Westmoreland v. Lumbermens Mut. Cas. Co., 704 So.2d 176, 179 (Fla. 4th DCA 1997). The issue of whether injuries or damages were expected or intended by the insured may be a question of fact or may be determined as a matter of law; where an insured's actions were so inherently dangerous or harmful that injury was sure to follow, the determination is a matter of law. State Farm Fire & Cas. Co. v. CTC Development Corp., 720 So.2d 1072, 1076 (Fla. 1998).

A. Preliminary Issue

If the complaint, fairly read, alleges facts which create potential coverage under an insurance policy, the insurer must defend the lawsuit. State Farm Fire & Casualty Co. v. Compupay, Inc., 654 So.2d 944 (Fla. 3d DCA 1995) In the Complaint, Plaintiff alleges that the Jansens brought an action against Plaintiff for injury allegedly sustained as a result of plaintiff's employee performing pool maintenance services at the Jansen's address. The Jansens' complaint alleges that the pool service technician was acting within the course and scope of his employment with the Defendant PINCH-A-PENNY. (Dkt. 2-1, p. 34). That allegation is a conclusion of law rather than an allegation of fact. The wrongful act alleged, the pool technician's act of "sexually pleasuring himself" and "casting ejaculate into the [Jansens'] pool" is not an act of pool maintenance. The liability of the principal for the torts of its agents is limited to those tortious acts committed while the agent was acting within the scope of his employment. "There is no

liability where the agent has stepped aside from his employment to commit a tort which the principal neither directed in fact, nor could be supposed, from the nature of his employment, to have authorized or expected the agent to do....In other words, the master's liability does not arise when the wrongful act is committed by the agent to accomplish his own purpose and not to serve the interests of the principal." Jones v. City of Hialeah, 368 So.2d 398, 401 (Fla. 3d DCA 1979)(citations omitted). The Court also notes that, where the material facts are undisputed, the question of whether an employee was acting within the scope of his employment in a particular instance is an issue of law for the Court to determine. Johnson v. Gulf Life Ins. Co., 429 So.2d 744, 746 (Fla. 3d DCA 1983).

Under Florida law, the conduct of an employee is within the scope of his employment, for the purpose of determining the employer's vicarious liability to third persons injured by the employee, only if: 1) the conduct is of the kind the employee is hired to perform; 2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and 3) the conduct is activated at least in part by a purpose to serve the master. Kane Furniture v. Miranda, 506 So.2d 1061 (Fla. 2d DCA), rev. denied, 515 So.2d 230(Fla. 1987).

Section II of the Commercial General Liability Coverage Form, **"WHO IS AN INSURED,"** provides:

1. If you are designated in the Declarations as:

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders........

2. Each of the following is also an insured:

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

Assuming that the conduct alleged meets the high standard for "outrageous conduct," no reasonable jury could ever find the wrongful acts of the pool service technician were done "while performing duties related to the conduct of [Plaintiff's] business" or "acts within the scope of [his] employment." The alleged wrongful conduct was not of the kind the pool service technician was hired to perform. The pool service technician had "stepped away" from his employer's business at the time the tort was committed, performing the alleged wrongful acts solely for his own benefit. Based on the facts alleged in the underlying complaint, the pool service technician was not an insured under Plaintiff's policy where the technician was not performing acts within the scope of his employment.

B. Intentional Infliction of Emotional Distress

The only legal theory underlying the claims against Plaintiff is intentional infliction of emotional distress. Intentional infliction of emotional distress ("IIED") is a state law claim. To state an IIED claim under Florida law, a plaintiff must allege: 1) deliberate or reckless infliction of mental suffering; 2) outrageous conduct that 3) caused the emotional distress, and 4) that the distress was severe. Liberty Mutual Ins. Co. v. Steadman, 968 So.2d 592, 594 (Fla. 2d DCA 2007). For conduct to be sufficiently outrageous, it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Lopez v. Target Corp., 676 F.3d 1230, 1236-36 (11th Cir. 2012).

IIED is an intentional tort. The factual allegations underlying the Jansens' IIED claims include the intentional acts of Plaintiff's employee. The complaint further alleges that "PINCH-A-PENNY's pool service technician intended and knew or should have known that emotional distress would likely result to [the Jansens] as a result of this subject behavior." The complaint also includes allegations of intentional acts which show "outrageous indifference toward [the Jansens] and their property." (Dkt. 2-1, pp. 35, 36).

Plaintiff argues that no damage was expected or intended from the standpoint of the pool service technician or Chestnut Associates, Inc. Plaintiff relies on the absence of factual allegations that anyone was at home at the time of the alleged incident, that the pool service technician intended to be or that he was being watched while he engaged in the purported conduct, or that the pool service technician knew that security cameras were recording his alleged conduct. The Court has noted the allegations of intentional acts, and of knowledge and intent by the pool service technician, within the complaint; it is irrelevant to the determination of coverage whether the pool service technician or Chestnut Associates in fact had knowledge of and intended to cause harm to the Jansens. It is the conduct which must be intentional or reckless, not the emotional distress which resulted. Dominguez v. Equitable Life Assur. Soc. of U.S., 438 So.2d 58, 59 (Fla. 3d DCA 1983)("[A]ll that need be shown is that he intended his specific behavior and knew or should have known that the distress would follow").

The Court finds that the alleged intentional acts are not an "occurrence," defined within the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Under Florida law, where the term "accident" is not defined within an insurance policy, it is broadly construed to include "accidental events" and "injuries or damage neither expected nor intended from the standpoint of the insured." State Farm Fire & Cas. Co. v. CTC Development Corp., 720 So.2d 1072, 1076 (Fla. 1998). The subject policy excludes "bodily injury" or "property

damage" expected or intended from the standpoint of the insured from coverage. The everyday meaning of this clause is that the policy does not insure against damages that an insured intentionally inflicts or that are expected to result from an insured's intentional acts. See Hrynkiw v. Allstate Floridian Ins. Co., 844 So.2d 739, 742 (Fla. 5th DCA 2003). In addition to the allegations of knowledge and intent in the underlying complaint, the alleged intentional acts of Plaintiff's technician fall into the category of acts from which the alleged resulting harm was sure to follow, given the nature of the alleged wrongful acts. In this case, the determination of whether the mental or emotional harm was expected or intended from the standpoint of the insured is a matter of law, not fact. LeGrande v. Emmanuel, 889 So.2d 991, 994 (Fla. 3d DCA 2004).

In the underlying complaint, the Jansens named only Chestnut Associates, Inc., etc. as the defendant, and alleged that the Plaintiff's pool service technician was acting within the course and scope of his employment with PINCH-A-PENNY. Under Florida law, an employer is responsible for an intentional tort committed by an employee if the employee committed the tort while acting within the course and scope of his employment, with the purpose of benefitting the interests of the employer. Ruiz v. Aerorep Group Corp., 941 So.2d 505, 507 (Fla. 3d DCA 2006). The Court has determined that the alleged wrongful acts of the pool service technician were not within the scope of his employment. However, if the intentional acts of the pool service technician acting within the course and scope of his employment are imputed to the employer, Chestnut Associates, Inc., those alleged wrongful acts are excluded from coverage by the intended or expected injury exclusion.

C. Pollution Exclusion

Defendant argues that the Pollution Exclusion bars coverage for "bodily injury" or "property damage" "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'". Defendant argues that the

Jansens allege damages that were caused by the contamination of their swimming pool by a "pollutant," the pool service technician's ejaculate. Courts have held that, under Florida law, natural bodily substances can be "pollutants" where they satisfy the definition in an insurance policy. See Gen. Fidel. Ins. Co. v. Foster, 808 F.Supp.2d 1315, 1321 n.6 (S.D. Fla. 2011); WPC Indus. Contractors Ltd. v. Amerisure Mut. Ins. Co., 660 F.Supp.2d 1341, 1346 (S.D. Fla. 2009).

The damages the Jansens allege in the underlying complaint arise out of the release of a "pollutant" in the Jansens' swimming pool. The Court notes that the only damages alleged in the underlying complaint are economic losses from the alleged diminution of the value of the subject property ("conduct caused [the Jansens] to suffer damages including, but not limited to: ...... [l]oss of or diminution in the value of the subject property.")(Dkt. 2-1, pp. 35, 37) Plaintiff argues that the above allegations are allegations establishing a claim for loss of use of tangible property such that the Jansens are asserting a claim for property damage for purposes of coverage under the Policy. After consideration, the Court finds that there are no allegations asserting a claim for loss of use in the underlying complaint. To the extent that the Jansens allege damage to their property in the underlying complaint, the damage alleged is within the pollution exclusion.

The Court has found that: 1) the pool service technician was not an "insured" under the Policy for the alleged wrongful conduct and the resulting damages; 2) that if the wrongful conduct of the technician is imputed to Plaintiff, coverage for the alleged wrongful conduct is excluded by the intended or expected injury exclusion; and 3) the Jansens' claim for damages for loss of value to the subject property is excluded from coverage by the pollution exclusion.

Where there is no coverage for wrongful acts alleged in the underlying complaint, there is no duty to defend. After consideration, the Court concludes that Defendant

Assurance had no duty to defend or indemnify Plaintiff.

D. Maryland Casualty

Defendant argues that Assurance Company of America, not Maryland Casualty Company, issued the subject policy to Chestnut Associates, Inc. (Dkt. 8, Ex. A-1, p. 25; Ex. A-2, p. 18). Defendant further argues that Plaintiff included no factual allegations providing a basis for naming Maryland Casualty as a defendant. Defendants requests entry of judgment as a matter of law in favor of Maryland Casualty.

In the Answer (Dkt. 8), Defendant Maryland Casualty asserts that Plaintiff has no standing to bring this action, because Maryland Casualty is not a party to an insurance contract with Plaintiff. After consideration, the Court dismisses Plaintiff's claim against Maryland Casualty without prejudice for lack of subject matter jurisdiction.

E. Zurich D/B/A Zurich Small Business

Defendant argues that Zurich D/B/A Zurich Small Business was not served and does not exist.

In the Answer (Dkt. 8), Defendant asserts that Plaintiff Chestnut has no standing to bring this action, because Assurance, not Zurich, issued the subject insurance policy to Plaintiff, and Zurich is not a party to the insurance contract with Plaintiff.

After consideration, the Court dismisses Plaintiff's claim against Zurich without prejudice for lack of subject matter jurisdiction. Accordingly, it is

Case No. 8:13-CV-1755-T-17TBM

**ORDERED** that the Motion for Summary Judgment of Defendant Assurance Company of America (Dkt. 21) is **granted**. Defendant has no duty to defend or indemnify Plaintiff Chestnut Associates, Inc. Plaintiff's claims as to Defendants Maryland Casualty and Zurich d/b/a Zurich Small Business are dismissed without prejudice for lack of subject matter jurisdiction. The Clerk of Court shall enter a final judgment in favor of Defendant Assurance Company of America and close this case.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 29th day of April, 2014.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record